**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| YVONNE VANSILL, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DOLLAR TREE STORES, INC., | § | Civil Action No. 4:19-cv-612-SDJ-KPJ |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Yvonne Vansill's ("Plaintiff") Motion to Determine Applicability of TEX. CIV. PRAC. & REM. ANN. § 18.001 *et seq.* (the "Motion") (Dkt. 20). On January 14, 2021, having received no response from Defendant Dollar Tree Stores, Inc. ("Dollar Tree"), the Court ordered Dollar Tree to file a response, if any, by January 22, 2021. *See* Dkt. 23. On January 22, 2021, Dollar Tree filed its response. *See* Dkt. 24. Having considered the pleadings, arguments, and applicable authorities, the Court finds the Motion (Dkt. 20) is hereby **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

Plaintiff alleges she went shopping at one of Dollar Tree's stores in Sherman, Texas, on July 26, 2017. *See* Dkt. 6 at 2. While Plaintiff "was making her way through the store," her feet "suddenly, unexpectedly and without any warning slipped out from under her on a slippery, foreign transitory substance on the floor." *Id.* at 2–3. Plaintiff alleges the fall put her in shock, causing her to briefly lose consciousness. *Id.* at 3. When Plaintiff regained her senses, she allegedly felt pain "immediately" throughout her head and body. *Id.* Plaintiff required emergency medical care and was transported to Texoma Medical Center. *Id.* Plaintiff alleges she later learned "an oily substance on the floor that had been previously mopped by an employee" caused her fall. *Id.*

Plaintiff maintains there were no adequate warning signs or barricades, and she could not have reasonably been expected to discover the "foreign transitory substance" prior to her fall. *Id.* at 3, 5.

On July 22, 2019, Plaintiff initiated suit against Dollar Tree in the 15th Judicial District Court of Grayson County, Texas, asserting a premises liability claim under Texas law. *See* Dkt. 1-2 at 1, 6; Dkt. 1-7 at 1. Subsequently, Dollar Tree removed the action to this Court. *See* Dkt. 1. On November 13, 2020, Plaintiff filed the present Motion (Dkt. 20), wherein Plaintiff requests the Court determine whether affidavits served pursuant to TEX. CIV. PRAC. & REM. ANN. § 18.001 are applicable in federal court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). On January 14, 2021, having received no response from Dollar Tree, the Court ordered Dollar Tree to file a response, if any, by January 22, 2021. *See* Dkt. 23. In that Order, the Court referred the parties to its Memorandum Opinion and Order in *Peals v. QuikTrip Corporation*, No. 4:20-cv-22-KPJ, 2021 WL 302547, — F. Supp. 3d — (E.D. Tex. 2021). *See* Dkt. 23. Dollar Tree then filed its response (Dkt. 24).

## II. <u>LEGAL STANDARD</u>

Under the *Erie* doctrine, "federal courts apply substantive state law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) (describing the holding in *Erie*).

As a general matter, a federal court sitting in diversity should not apply state law if a Federal Rule is in direct conflict with the state law and the Federal Rule does not violate the Rules Enabling Act. *See Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019). However, "some modest exceptions have been made when the forum rule reflects a state substantive law or policy." ARTHUR R. MILLER & CHARLES A. WRIGHT, 19 FEDERAL PRACTICE AND PROCEDURE § 4512 nn.40, 57 (3d ed.) (October 2020 update) (compiling cases). "Thus, even though the passage of the Federal Rules of Evidence in 1975 rendered the *Erie* analysis inapplicable to most evidentiary

2

questions in diversity cases, it did not have the effect of supplanting *all* state law evidentiary provisions with federal ones." *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995) (emphasis original).

To determine whether the state law reflects a substantive state policy, federal courts look to the final decisions of the state's highest court. *See Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 993 (5th Cir. 1999). If there is no ruling from a final decision of the state's highest court, "it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Lampton v. Diaz*, 661 F.3d 897, 899 (5th Cir. 2011).

Federal courts also evaluate the state law under the U.S. Supreme Court's *Erie* "touchstones":

- whether the state law is outcome determinative;
- whether the state law is "bound up" with the state's substantive rights and obligations;
- whether the state law affects forum shopping behavior; and
- whether applying state law will avoid inequitable administration of the laws.

*All Plaintiffs v. All Defendants*, 645 F.3d 329, 335–36 (5th Cir. 2011); *see Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (forum shopping and inequitable administration); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 538–39 (1958) (bound up); *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (outcome determinative).

In *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996), the Supreme Court clarified that discouraging forum shopping and avoiding inequitable administration of the laws guides the application of the outcome-determinative test. *See id.* at 428; *see also All Plaintiffs*, 645 F.3d at 336.

## III.  ANALYSIS

### A.  SECTION 18.001 OVERVIEW

Under Texas law, the plaintiff bears the burden of proving the actual amount, necessity, and reasonableness of her past medical expenses. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 886 (5th Cir. 2004); *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). "Traditionally, expert testimony was the only acceptable means of proving the reasonableness and necessity of past medical expenses." *Rahimi v. United States*, 474 F. Supp. 2d 825, 826 (N.D. Tex. 2006) (citing *Castillo v. American Garment Finishers Corp.*, 965 S.W.2d 646, 654 (Tex. App.—El Paso 1998, no pet.)).

With the enactment of TEX. CIV. PRAC. & REM. ANN. § 18.001, the Texas Legislature permitted plaintiffs to submit affidavits to prove the necessity and reasonableness of medical expenses. *See id.* § 18.001; *Castillo*, 965 S.W.2d at 654. Specifically, Section 18.001(b) provides:

> Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

*Id.* § 18.001(b). The statute's remaining provisions specify timing and notice requirements, as well as the requirements for any counter-affidavit an opponent wishes to submit. *See* § 18.001(d)–(i).

The Texas Supreme Court, Courts of Appeals of Texas, and federal district courts have all recognized that Section 18.001 allows litigants to save substantial time and costs. *See, e.g.*, *Gunn v. McCoy*, 554 S.W.3d 645, 672 (Tex. 2018) (holding Section 18.001 affidavits streamline proof of reasonableness and necessity); *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 491 (Tex. App.—Dallas 2016, pet. denied) (holding Section 18.001 affidavits "can save the plaintiffs the expense of having to hire an expert to testify"); *Ramirez v. United States*, No. SA-19-cv-00072-JKP, 2020 WL 2198167, at *1 (W.D. Tex. May 6, 2020) (finding a Section 18.001

4

affidavit "provides significant savings of time and cost to litigants, particularly personal injury litigants") (citation omitted).

To promote Section 18.001's efficiency goals, Texas appellate courts have held the statute requires counter-affidavits to satisfy a higher standard for admissibility, reasoning that adversaries should be discouraged from misusing Section 18.001 and frustrating its purpose. *See Hong v. Bennett*, 209 S.W.3d 795, 803 (Tex. App.—Fort Worth 2006, no pet.); *Turner v. Peril*, 50 S.W.3d 742, 747 (Tex. App.—Dallas 2001, pet. denied); *In re Brown*, No. 12-18-00295-CV, 2019 WL 1032458, at *3 (Tex. App.—Tyler Mar. 5, 2019, orig. proceeding); *Wald Tinkle Packaging & Distrib., Inc. v. Pinok*, No. 01-02-01100-CV, 2004 WL 2966293, at *9 (Tex. App.—Houston [1st Dist.] Dec. 23, 2004, no pet.). As the court in *Turner* held, Section 18.001(c)(2)(B) allows the offering party to submit an affidavit by a non-expert custodian, whereas Section 18.001(f) requires a counter-affidavit be made "by a person qualified to testify in contravention." 50 S.W.3d at 747.

For example, in *Hong*, the court held a chiropractor's counter-affidavit could not be used to controvert affidavits submitted by a medical doctor, radiologist, and pharmacist. *See* 209 S.W.3d at 804. The court reasoned the chiropractor's counter-affidavit could be used to controvert the reasonableness and necessity of services provided by a *chiropractic* affiant, but not the reasonableness and necessity of services provided by other healthcare professionals, even though they work in the same general industry. *See id.*

Similarly, in *Turner*, the court held an orthopedic surgeon's conclusory and vague counter-affidavit could not be used to rebut affidavits submitted by a hospital, pharmacy, chiropractor, diagnostic center, nurse anesthetist, or doctor, as these individuals and entities were not themselves orthopedic surgeons. *See* 50 S.W.3d at 747.

## B. DIRECT CONFLICT

"The initial step [in an *Erie* analysis] is to determine whether, when fairly construed, the scope of [the Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *All Plaintiffs*, 645 F.3d at 333 (citing *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)). "In determining whether the Rule covers a particular issue, we look to the plain meaning of the Rule's language." *Id.* (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 & n.9 (1980)). "If we determine that such a 'direct collision' does occur, we must apply the Federal Rule as long as the Rule is a valid exercise of Congress's rulemaking authority." *Id.* (citing *Burlington*, 480 U.S. at 4–5). "Only if this initial inquiry is not determinative will we wade into the 'murky waters' of *Erie* itself." *Id.* (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)).

In *Peals*, the Court noted Federal Rule of Evidence 802 poses a conflict with Section 18.001. *See* 2021 WL 302547, at *3. However, the Court did not find Rule 802 was in *direct* conflict with Section 18.001, despite other district courts reaching a contrary conclusion. *See id.* (compiling cases).

The Court now expounds upon why a direct conflict does not exist. To be sure, Rule 802 bars hearsay statements, and Section 18.001 allows a court to admit affidavits that would otherwise be inadmissible hearsay. *See* FED. R. EVID. 802; *Hong*, 209 S.W.3d at 800 (describing § 18.001 as a hearsay exception).

But even though Rule 802 generally prohibits hearsay, it also permits a court to admit hearsay if an exception applies by way of another federal statute, evidentiary rule, or rule from the United States Supreme Court. *See* FED. R. EVID. 802. Here, there exists a Federal Rule of Evidence that allows the admission of Section 18.001 affidavits—Rule 807, commonly known as the "residual hearsay exception." *See* FED. R. EVID. 807; *United States v. Walker*, 410 F.3d 754, 757

6

(5th Cir. 2005). Rule 807 allows a court to admit hearsay if the statement is (1) "supported by sufficient guarantees of trustworthiness" and (2) "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." *Id.* Rule 807 was created to provide courts with "the flexibility necessary to address unanticipated situations and to facilitate the basic purpose of the Rules: ascertainment of the truth and fair adjudication of controversies." *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*, 386 F. Supp. 3d 760, 764 (E.D. Tex. 2019) (citing *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 462 (5th Cir. 1985)).

### 1. Sufficient Guaranty of Trustworthiness

Affidavits offered under Section 18.001 carry "sufficient guarantees of trustworthiness." FED. R. EVID. 807. As the Texas Supreme Court has noted, affiants from the medical and insurance industries are well-positioned to testify to the reasonableness and necessity of medical expenses incurred by an injured party:

> Health care costs today are complex, and the price of a particular provider's services may depend on many factors, including geography, experience, location, government payment methods, and the desire to make a profit. . . . We have previously noted that agreements between willing providers and willing insurers can yield reasonable rates. . . . [W]ith national and regional bases on which to compare prices actually paid, **insurance agents are generally well-suited to determine the reasonableness of expenses**. . . . In determining the necessity of medical expenses, it is beyond argument that medical providers—doctors—are in the best position to determine what treatments or procedures and resulting expenses are "necessary." So of course, **ideally, medical providers themselves would testify to the necessity of medical expenses**. However, by drafting section 18.001 to allow either "the person who provided the service" or the "person in charge of records" to testify to reasonableness and necessity, the Legislature has acknowledged and made allowance for the reality that the ideal paradigm does not reflect today's complex health care system. **And, for better or for worse, in the context of our health care system, what is "necessary" is often heavily influenced by insurance companies** and by what treatments and procedures they are willing to cover.

*Gunn*, 554 S.W.3d at 673–74 (internal citations omitted) (emphasis added). In light of the Texas Legislature's policy reasons for enacting Section 18.001, and the Texas Supreme Court's opinion

7

in *Gunn*, the first requirement for the residual hearsay exception—sufficient guarantees of trustworthiness—is satisfied. *See id.*; FED. R. EVID. 807(a)(1).

### 2. Probative Value and Reasonable Efforts

Further, Section 18.001 affidavits are "more probative" of the reasonableness and necessity of medical expenses than other evidence obtainable through "reasonable efforts." *See* FED. R. EVID. 801(a)(2). To prove the reasonableness and necessity of her medical expenses, Plaintiff has two options—submit affidavits or hire expert witnesses. At times, hiring expert witnesses is neither feasible nor reasonable.

As Plaintiff correctly notes, "the savings in the cost of litigation afforded by [Section 18.001] are enormous." Dkt. 20 at 2. Expert fees can easily cost tens of thousands of dollars, if not more. *See, e.g.*, *J.T. Gibbons v. Crawford Fitting Co.*, 102 F.R.D. 73, 90 (E.D. La. 1984) (incurring $150,480.70 in expert witness fees); *Guzman v. Hacienda Records*, No. 6:12-cv-42, 2015 WL 4920058, at *5 (S.D. Tex. Aug. 18, 2015) ($30,510.00); *Sun Media Sys., Inc. v. KDSM, LLC*, 587 F. Supp. 2d 1059, 1066 (S.D. Iowa 2008) ($22,600.97); *Jensen v. Lawler*, 338 F. Supp. 2d 739, 746–47 (S.D. Tex. 2004) ($13,088.53). In *Peals*, this Court found that if Section 18.001 did not apply in federal court, some personal injury plaintiffs could be "priced out" of the federal judiciary and "may settle on less advantageous terms compared to their state counterparts." 2021 WL 302547, at *9. Thus, the applicability of Section 18.001 "significantly affect[s] the results" of litigation: "Indeed, the costs of retaining, deposing, and litigating the qualifications of experts would render it impracticable for many injured parties to litigate in federal court." *Bagley v. Dollar Tree Stores, Inc.*, No. 1:18-cv-580, 2019 WL 6492585, at *7 (E.D. Tex. Dec. 2, 2019).

Where a plaintiff cannot afford to hire an expert witness, Section 18.001 affidavits are often the most probative evidence available to her, despite their hearsay nature. Despite her best "reasonable efforts," a plaintiff with less financial means will not be able to obtain superior evidence to prove the reasonableness and necessity of her medical expenses. *Cf. United States v.*

8

*Anderson*, No. 3:17-cv-00222-M, 2020 WL 4346883, at *2 (N.D. Tex. July 29, 2020) (stating "exceptional circumstances" will justify a party's inability to obtain alternative evidence). Accordingly, both prongs for the residual hearsay exception are satisfied, and Rule 807 allows the Court to admit Section 18.001 affidavits. This leads the Court to find no "direct conflict" such that the Federal Rules leave "no room" for Section 18.001's application. *All Plaintiffs*, 645 F.3d at 333. In the absence of a direct conflict, the Court must wade into the "murky waters" of *Erie*. *See id.*

### C.  *ERIE* ANALYSIS

With respect to the remainder of the Court's *Erie* analysis, the Court reiterates the reasoning and findings articulated in *Peals*. *See* 2021 WL 302547, at *4–9. In *Peals*, this Court thoroughly analyzed precedent from the Fifth Circuit, precedent from the Texas Supreme Court, and the *Erie* "touchstones." *See id.* Ultimately, the Court found "(1) Fifth Circuit precedent would classify affidavits offered under Section 18.001 as substantive, (2) decisions from the Supreme Court of Texas are not clearly contrary to this finding, (3) the Court's *Erie* guess predicts Section 18.001 affidavits are substantive, and (4) all the *Erie* considerations weigh in favor of substance, not procedure." *Id.* at *10. The Court stands by its analysis and findings: Section 18.001 applies in federal courts to the extent Section 18.001 permits a party to submit affidavits to prove the reasonableness and necessity of its medical expenses. *See id.*

### D.  SECTION 18.001'S TIMING AND NOTICE PROVISIONS

Plaintiff's Motion appears to argue Section 18.001's timing and notice provisions also apply in federal court, as Plaintiff discusses the applicability of a thirty-day requirement for counter-affidavits. *See* Dkt. 20 at 2. The Court denies the Motion in this regard.

To the extent Section 18.001(d)–(i) imposes deadline and notice requirements for filing affidavits and counter-affidavits, these provisions are clearly procedural, and hence, the Court is not bound to follow them. *See Peals*, 2021 WL 302547, at *9; *Bagley*, 2019 WL 6492585, at *7. Rather, the timing and notice requirements articulated in the Federal Rules of Civil Procedure, the

Local Rules for the Eastern District of Texas, the Court's Order Governing Proceedings (Dkt. 8), and the Court's Scheduling Orders (Dkts. 14, 19) apply to Plaintiff's filing and notice of any affidavits, as well as any counter-affidavit Dollar Tree wishes to procure. *See Peals*, 2021 WL 302547, at *9. To the extent the parties desire leave to amend the First Amended Scheduling Order (Dkt. 19), they should file the appropriate motion with the Court.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds Plaintiff's Motion (Dkt. 20) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

Plaintiff's Motion (Dkt. 20) is **GRANTED** insofar that Plaintiff wishes to offer affidavits pursuant to TEX. CIV. PRAC. & REM. ANN. § 18.001.

Plaintiff's Motion (Dkt. 20) is **DENIED** insofar that Plaintiff wishes the Court to impose the timing and notice provisions of TEX. CIV. PRAC. & REM. ANN. § 18.001.

**So ORDERED and SIGNED this 18th day of February, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE